UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


FRONT-LINE PROMOTIONS &                          CIVIL ACTION
MARKETING, INC. and INSIGHTS
MARKETING & PROMOTIONS, INC.                     No. 08-3208

VERSUS                                                                       SECTION I/4

MAYWEATHER PROMOTIONS, LLC
and FLOYD MAYWEATHER, JR.


## ORDER AND REASONS

Before the Court is a motion for partial summary judgment, filed on behalf of defendants, Mayweather Promotions, LLC ("Mayweather Promotions") and Floyd Mayweather, Jr. ("Mr. Mayweather").[1] Plaintiffs, Front-Line Promotions & Marketing, Inc. ("Front-Line") and Insights Marketing & Promotions, Inc. ("Insights"), have opposed the motion.[2] For the following reasons the motion is **DENIED IN PART** and **GRANTED IN PART.**

### *BACKGROUND*

On January 16, 2008, Insights and Front-Line entered into a partnership agreement, executed by Keshia Walker ("Walker") for Insights and Pat Nix ("Nix") for Front-Line.[3] Insights and Front-Line agreed to produce two events at the Sugar Mill in New Orleans on

---

[1] R. Doc. No. 47.

[2] R. Doc. No. 52, mem. opp'n.

[3] R. Doc. No. 52-2, ex. A, partnership agreement.

1

February 16 and February 17, 2008.[4] They each agreed to procure the attendance of certain celebrities and musicians to appear at the events; Front-Line agreed to secure Mr. Mayweather to host the Sunday night (February 17) event (the "Event").[5]

Thereafter, Christina Clark, for Nix of Front-Line, and Tasha Robinson-White ("Robinson-White") signed an agreement.[6] The agreement was for Mr. Mayweather to appear at the Event in exchange for a $25,000 fee, half of which was to be paid within twenty-four hours of executing the contract.[7] At the top of the agreement is the heading "Mayweather Promotion [sic], LLC." The "Talent" is identified as "Floyd Mayweather of Mayweather Promotions, LLC." The final paragraph states that, "This agreement is confidential between the promoter named Frontline Promotions and the talent named Floyd "Money Mayweather" of Mayweather Promotions, LLC."[8] A second page of the fully executed version of the agreement contains signature lines for "Promoter" and for "Talent Representative." Robinson-White signed on the "Talent Representative" line.

---

[4] February 16-17, 2008 was the NBA All-Star Weekend, during which the National Basketball Association's All-Star Game was held in New Orleans. Pursuant to the agreement, Insights and Front-Line agreed to split the costs of and revenues from the events. They also agreed to secure corporate sponsors for the events, with a fifteen percent fee of any sponsorship revenues going to whichever party secured the sponsor.

[5] The other event hosts were Dwyane Wade, Allen Iverson, and DJ Kid Capri.

[6] See R. Doc. No. 47-5, exs. A1, A2. Defendants submit two copies of the agreement, one partially executed and the other fully executed. The fully executed version is essentially illegible. Other than the additional signature on this latter version, the documents appear to contain the same textual contents and plaintiffs have not contended otherwise. The Court refers to the partially executed copy for ease of legibility.
The Court further notes that the date of this agreement is not apparent from the exhibits nor is it identified by the parties.

[7] Although the Court notes that on its face the agreement's sole specific obligation is for Mr. Mayweather to "do radio drops and interviews for promotions of the event," defendants have conceded that the contract was also intended to secure Mr. Mayweather's attendance at the Event. See R. Doc. No. 47-3, mem. supp. at 2-3. The agreement also sets forth various beverages to be provided "at each venue," presumably by the Event promoter, although this is not altogether clear.

[8] R. Doc. No. 47-5, ex. A1, agreement.

Mr. Mayweather did not appear at the Event.[9] Plaintiffs filed a lawsuit in this Court on May 9, 2008.[10] Their complaint seeks damages for financial loss and reputational injury due to defendants' alleged breach of the agreement, as well as consequential damages for defendants' bad faith failure to perform under the agreement.[11] Defendants' motion seeks: (1) dismissal of all claims against Mr. Mayweather; and (2) dismissal of all claims by Insights.

*LAW AND ANALYSIS*

I. **STANDARD OF LAW**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. Celotex, 477 U.S. at 323; Fontenot v. Upjohn Co.,

---

[9] Plaintiffs' brief contains various allegations of what transpired following the execution of the appearance agreement. However, these allegations are not supported by proper summary judgment evidence. Plaintiffs allege that the 50% deposit funds of $12,500 "were wired to PR Store, an entity and account of Tasha Robinson-White." Mem. opp'n at 3. Plaintiffs' references to Robinson-White's deposition, however, appear to describe the general process for wiring funds to her PR Store account, rather than those specific to this case.

[10] R. Doc. No. 1, complaint.

[11] Complaint ¶¶15, 16, 18. Plaintiffs' complaint relies on a sole legal theory: breach of contract. The complaint refers to Louisiana Civil Code articles 1994, 1995, and 1997, all of which address contractual obligations. Id. ¶¶17-18. Further, the complaint expressly refers to Floyd's "fail[ure] to fulfill his talent appearance agreement" and his "breach of contract." Id. ¶¶14, 16. Nowhere in the complaint do plaintiffs set forth allegations premised in tort or any other theory of liability.

3

780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. Id. The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's] favor." Id. at 255; see Hunt v. Cromartie, 526 U.S. 541, 552 (1999).

## II. DISCUSSION

Defendants seek summary judgment in favor of Mr. Mayweather on all claims and against Insights on all claims. The Court addresses these arguments in turn.

A.     *Mr. Mayweather's Potential Liability as a Defendant*

Defendants contend that Mr. Mayweather cannot be liable to plaintiffs because he was not a party to the contract and, therefore, he cannot be liable for any breach of that contract. Plaintiffs contend that Mr. Mayweather is a proper defendant for three reasons. First, they argue, Robinson-White is his agent (or "mandatary" in the Louisiana state law parlance) and she bound him to appear at the Event when she signed the contract on his behalf. Second, plaintiffs argue that Mr. Mayweather's obligation to appear was strictly personal, as defined by the Louisiana Civil Code,[12] and that he cannot escape personal liability. Third, plaintiffs contend that the contract is vague and ambiguous as to the identity of the obligor and that it should, therefore, be construed against the drafter, Mayweather Promotions.

As an initial matter, "[a] party cannot breach a contract to which it is not a party." Kenny Enters., Inc. v. Balfour Betty de Venezuela, C.A., No. 93-1630, 1994 WL 179976, at *1 (E.D. La. Apr. 28, 1994). Defendants' argument hinges upon whether Mr. Mayweather is a party to the agreement. "In construing contracts, it is well established that '. . . the contract itself is the best evidence of the relationship existing between the parties and the true intention of the parties is to be sought and determined by the language of the contract when the wording is clear.'" Winn

---

[12] Louisiana Civil Code article 1766 states:
> An obligation is strictly personal when its performance can be enforced only by the obligee, or only against the obligor.
>
> When the performance requires the special skill or qualification of the obligor, the obligation is presumed to be strictly personal on the part of the obligor. All obligations to perform personal services are presumed to be strictly personal on the part of the obligor.
>
> When the performance is intended for the benefit of the obligee exclusively, the obligation is strictly personal on the part of that obligee

5

State Bank & Trust Co. v. Browning, 453 So. 2d 286, 290 (La. Ct. App. 1984).

The final paragraph of the agreement contemplates who is a party to the agreement. It identifies two parties: first, Front-Line, as promoter; and second, "Floyd 'Money Mayweather' of Mayweather Promotions, LLC" as talent. The contract further defines "Talent" as "Floyd Mayweather of Mayweather Promotions, LLC."[13] This plain text suggests that this agreement intended to make Mr. Mayweather a party.

However, defendants stress the fact that Mr. Mayweather did not sign the agreement. Instead, it was initialed and signed by Robinson-White as "Talent Representative." According to her deposition testimony, signing similar agreements as talent representative of Mr. Mayweather was a part of Robinson-White's duties for Mayweather Promotions.[14]

Plaintiffs argue that Robinson-White was acting as Mr. Mayweather's mandatary when she signed the agreement as his talent representative.[15] They further argue, pursuant to Louisiana Civil Code article 3020,[16] that Mr. Mayweather is bound to perform the obligations that Robinson-White, acting on his behalf, agreed he would perform.

In their reply brief, defendants argue that Robinson-White did not work for Mr.

---

[13] The Court notes the inconsistent nomenclature of Mr. Mayweather as, on the one hand, "Floyd Mayweather" and, on the other hand, as "Floyd 'Money Mayweather.'" However, it is clear that these appellations refer to one and the same person: Mr. Mayweather.

[14] R. Doc. No. 47-8, ex. C, Tasha Robinson-White dep. at 38:17-22. Elsewhere in her deposition, Robinson-White further references her general practice of signing contracts for Mr. Mayweather. See id. at 22:4-14; 37:12-38:8.

[15] Louisiana Civil Code article 2989 defines a mandate: "A mandate is a contract by which a person, the principal, confers authority on another person, the mandatary, to transact one or more affairs for the principal."

[16] Article 3020 provides: "The principal is bound to perform the contract that the mandatary, acting within the limits of his authority, makes with a third person."

Mayweather personally and that she never contended that she was his agent or mandatary.[17] However, during her deposition, Robinson-White stated, "I work for Floyd Mayweather," and went on to enumerate the entities that she worked for which are designed to exploit the Floyd Mayweather brand.[18] Moreover, as mentioned above, Robinson-White testified that booking events for Mr. Mayweather as his talent representative was one of her duties for Mayweather Promotions. Mr. Mayweather himself testified that Robinson-White lacked the "ability to sign appearance agreements" on his behalf.[19]

There is a clear conflict in the testimony. Robinson-White's testimony strongly suggests that she was Mr. Mayweather's mandatary, with authority to book appearances on his behalf.[20] The cited portion of Mr. Mayweather's testimony, meanwhile, suggests the opposite, notwithstanding what actually occurred in this case. In light of this conflicted testimony on a material fact, summary judgment in favor of Mr. Mayweather on all claims is inappropriate and is **DENIED**.[21]

---

[17] The following exchange occurred during Robinson-White's deposition:
    A. . . . I work for Mayweather Promotions. Do you understand?
    Q. I thought your earlier testimony was that you work for Floyd Mayweather.
    A. I work for his brands.
    Q. Okay. So you do not work for Floyd Mayweather?
    A. I receive a check from Mayweather Promotions.
Robinson-White dep. 50:7-19.

[18] Id. at 6:2-21.

[19] Mayweather dep. at 18:1-3.

[20] At a minimum, Robinson-White's testimony establishes that she believed she had such authority.

[21] Because the Court has ruled in favor of plaintiffs on the basis of their first argument, it need not consider their second and third arguments. However, the Court makes the following observations.
    In their reply brief, defendants do not deny that Mr. Mayweather's obligation to appear at the event "requires the special skill or qualification of the obligor." Rather, defendants reiterate their argument that Mayweather Promotions, rather than Mr. Mayweather, is the obligor under the agreement and that Louisiana Civil Code article 1766 is not relevant to the breach of contract claim. The Court notes that Fletcher v. Rachou, 323 So. 2d 163 (La. Ct. App. 1975), held merely that "a contract for personal services is not affirmatively enforceable. Id. at

B.  *Insights's Standing as a Plaintiff*

Defendants contend that Insights was not a party to the contract and that it, therefore, has no cause of action for breach of contract.[22] Plaintiffs respond that by virtue of their partnership agreement, Insights and Front-Line formed a joint venture partnership that, when bound by one of the partners, can enforce the contract. Because the joint venture no longer existed at the time the lawsuit was filed, plaintiffs argue, only the former partners in their individual capacities could enforce the agreement. Therefore, conclude the plaintiffs, Insights is a proper plaintiff in this suit to enforce its contractual interest arising out of the former partnership.

"In Louisiana, an action to enforce a contract obligation cannot be brought by an individual who is not a party to that contract." Edwards v. Sw. Bus. Corp., No. 06-9881, 2008 WL 4372893 (E.D. La. Sep. 22, 2008) (Feldman, J.) (citing Randall v. Lloyd's Underwriters, 602 So. 2d 790, 791 (La. Ct. App. 1992)). It cannot be disputed that Insights is not named as a party in the contract between Mayweather Promotions and Front-Line.

Plaintiffs contend that Louisiana Civil Code article 2816 enables Insights to sue on behalf

---

167. It did not address whether a plaintiff may collect damages for the breach of a personal services contract against the person who was to perform those services.
 Meanwhile, in the Court's view, the agreement may be considered ambiguous with respect to whether it binds Mr. Mayweather individually or Mayweather Promotions. As stated above, it identifies "Floyd 'Money Mayweather' of Mayweather Promotions, LLC" as a party to the agreement.

[22] Defendants argue, pursuant to Rule 17(a) of the Federal Rules of Civil Procedure, that Insights is not the real party in interest to this lawsuit. The Fifth Circuit has summarized the law in this area as follows:
> The real party in interest is the person holding the substantive right sought to be enforced, and not necessarily the person who will ultimately benefit from the recovery. Conversely, a party not possessing a right under substantive law is not the real party in interest with respect to that right and may not assert it. A federal court sitting in diversity must look to state law to determine which party holds the substantive right.

Farrell Const. Co. v. Jefferson Parish, La., 896 F.2d 136, 140 (5th Cir. 1990) (citations omitted). Accordingly, in this diversity case, the Court applies Louisiana law to determine whether Insights has a substantive right to proceed against Mr. Mayweather and Mayweather Promotions.

8

of the partnership that existed between it and Front-Line. That article states:

> An obligation contracted for the partnership by a partner in his own name binds the partnership if the partnership benefits by the transaction or the transaction involves matters in the ordinary course of its business. If the partnership is so bound, it can enforce the contract in its own name.

Plaintiffs cite Johnson v. Iowa Rice Dryer, Inc., 226 So. 2d 194 (La. Ct. App. 1969), for the proposition that former partners of a dissolved partnership may enforce their partnership interests in their individual capacities.[23] Johnson held that an "ex-partner . . . has an interest in the proceeds of the contract of the dissolved partnership" Id. at 197. However, in Johnson, the contract in question was between the defendant and the dissolved partnership. Id. at 196. Here, the contract is between the defendants and one of the alleged partners – Front-Line – without mention of the partnership anywhere in the agreement.

Defendants, pursuing this argument, cite Creaghan-Webre-Baker v. Le, 534 So. 2d 94 (La. Ct. App. 1988).[24] In Creaghan, an alleged partnership sued the defendant for breach of contract. The defendant challenged the propriety of the partnership as plaintiff.[25] The plaintiff cited article 2816, arguing that a partnership can enforce a contract in its own name when the obligation was clearly contracted for the partnership, notwithstanding the fact that the contract

---

[23] Mem. opp'n at 18. Plaintiffs also cite American Fidelity Fire Insurance Co. v. Atkison, 420 So. 2d 691 (La. Ct. App. 1982), which the Court finds to be inapplicable to the facts of this case.

[24] A court in this district relied upon Creaghan in a bankruptcy appeal. See In re Tahkenitch Tree Farm P'ship, No. 94-3268, 1995 WL 428585 (E.D. La. July 18, 1995) (Duval, J.). In Tahkenitch, a defendant signed an agreement before any partnership had come into existence. The district court reasoned that it was not possible for the eventual partnership to be bound by an agreement signed by one of its partners before the partnership even existed. Id. at *4-5.

[25] The defendant argued that the contract was between itself and three individuals and that no reference to any partnership existed in the contract. Creaghan, 534 So. 2d at 95.

9

was entered into by the partners individually. Id. at 97. The court rejected the plaintiff's reliance on article 2816, stressing that "[t]here is no mention in the contracts that any one or all of the parties were contracting on behalf of a partnership." Id. Accordingly, the court affirmed the dismissal of the plaintiff's lawsuit.

The fact that the individual partners did not disclose the alleged partnership's existence to the defendant was critical to the Creaghan court. "A plain reading of [article 2816] reveals that there must be an obligation contracted for the partnership." Id. The court found that there was no "evidence that a partnership of the employees was disclosed to defendants when the contracts sought to be enforced were entered into by the parties." Id. at 98. Accordingly, the plaintiff "failed to carry its burden of proof of disclosure of the partnership." Id.

In the instant case, the agreement makes no mention of Insights or of any partnership between Front-Line and Insights. Moreover, plaintiffs submit no evidence that defendants were aware that they were contracting with a partnership when the contract was executed. Front-Line may have assumed it was acting for and binding the partnership when it executed the contract; however, there is no evidence that this assumption was communicated to defendants. Under Creaghan, a plaintiff seeking to avail itself of article 2816 must show that the defendant knew it was contracting with a partnership. As in Creaghan, plaintiffs have not met that burden. Accordingly, Insights has no right to sue defendants for the alleged breach of contract.

C.  *Summary Judgment Evidence*

In their reply memorandum, defendants object to the evidence plaintiffs have submitted in connection with their response.[26] Plaintiffs filed a surreply in an attempt to cure any alleged defects in their evidence.[27]

Other than plaintiffs' exhibit A, the "All-Star Weekend Partnership Agreement," all the evidence integral to the Court's present ruling is also relied upon by defendants. For instance, the depositions of Mr. Mayweather and Robinson-White and the agreement that is the subject of the lawsuit are also attached to defendants' original motion. Moreover, in their surreply, plaintiffs have attached the reporter certificates from the depositions of Mr. Mayweather and Robinson-White.[28]

With respect to the partnership agreement, plaintiffs have submitted an excerpt from Walker's deposition, which shows the agreement as an attachment. Although the specific authenticating testimony of Walker has not been identified, defendants' counsel confirmed to the Court on March 30, 2009 that it no longer disputes the authenticity of this document.

III.  **CONCLUSION**

Accordingly,

**IT IS ORDERED** that defendants' motion for partial summary judgment is **DENIED IN PART** and **GRANTED IN PART**. It is **DENIED** insofar as defendants seek dismissal of all

---

[26] Reply at 11-13.

[27] R. Doc. No. 68-3, surreply.

[28] See R. Doc. Nos. 68-5, 68-6, exs. D, E. Notably, the signature of the court reporter for Mr. Mayweather's deposition, Loree Murray, is not present on the attached certificate.

claims against Mr. Mayweather. It is **GRANTED** insofar as defendants seek dismissal of all claims by Insights.

**IT IS FURTHER ORDERED** that all claims by plaintiff, Insights Marketing & Promotions, Inc. are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that defendants' and plaintiffs' respective motions for leave to file reply and surreply are **GRANTED**.[29]

New Orleans, Louisiana, March 31, 2009.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[29] R. Doc. Nos. 63, 68.